**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| **L.T.**, a minor, by and through his parents and natural guardians, **DAVID TOMASI** and **LIVIJA MUJKANOVIC**; and **DAVID TOMASI** and **LIVIJA MUJKANOVIC**, individually,<br><br>       Plaintiffs,<br><br>v.<br><br>**WALMART INC.**; **WAL-MART STORES EAST, L.P.**; and **WAL-MART REAL ESTATE BUSINESS TRUST**,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 25-454<br>)<br>) Jury Trial Demanded<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

1. Plaintiff L.T., a minor child, was very seriously injured as a result of riding a dangerously defective bicycle his parents purchased for him at a Walmart store in Williston, Vermont.

2. Despite being on notice that a bicycle it previously sold to L.T.'s family was defective, Walmart sold them another bicycle that was improperly assembled and unsafe. L.T. was riding this second bicycle when he was injured.

3. A highly qualified, nationally recognized bicycle-accident expert has confirmed that this second bicycle had been improperly assembled and that the defective assembly caused the injury.

4. Plaintiffs seek to hold Walmart accountable for its negligence, sale of a defective product, breach of warranties, and unfair and deceptive practices.

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

6. Venue is proper under 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims, including the sale of the bicycle to Plaintiffs and L.T.'s injury, occurred in Vermont.

## PARTIES

7. Plaintiff L.T., a minor child, lives in Colchester, Vermont, with his parents and natural guardians, Plaintiff David Tomasi, L.T.'s father, and Plaintiff Livija Mujkanovic, L.T.'s mother. Plaintiff L.T. is 11 years old. L.T. was 10 years old at the time of the accident at issue.

8. As a minor, L.T. is identified herein by his initials only, pursuant to Federal Rule of Civil Procedure 5.2(a)(3).

9. Walmart Inc. is a corporation. Walmart Inc. is incorporated in Delaware, and its principal place of business is in Arkansas.

10. Wal-Mart Stores East, L.P. (WSELP) is a limited partnership. WELSP is an indirect, wholly owned subsidiary of Walmart Inc. WSE Management, LLC is the general partner of WSELP, and WSE Investment, LLC is the limited partner of WSELP. Wal-Mart Stores East, LLC is the sole member for each of WSE Management, LLC and WSE Investment, LLC. Walmart Inc. is the sole member of Wal-Mart Stores East, LLC.

11. Wal-Mart Real Estate Business Trust (WREBT) is a Delaware statutory business trust. WREBT was formed under the laws of Delaware. WREBT's sole beneficiary is Walmart Inc.

12. Walmart Inc., WSELP, and WREBT are affiliated with each other.

13. Walmart Inc., WSELP, and WREBT are all Walmart entities.

14. Plaintiffs allege that Walmart Inc., WSELP, and/or WREBT own and/or operate the Walmart store located in Williston, Vermont.

15. One or more of the Defendants—Walmart Inc., WSELP, and WREBT—may be referred to herein as "Walmart."

16. All claims alleged herein are brought against each of the three Defendants: Walmart Inc., WSELP, and WREBT.

17. Plaintiffs are presently unable to determine which of the named Walmart entities—Walmart Inc., WSELP, or WREBT—owns, maintains, and/or operates the Walmart store located in Williston, Vermont. Upon information and belief, one or more of these entities was responsible for the ownership, maintenance, and operation of the store at all times relevant to this action.

## FACTUAL BACKGROUND

### The bicycle

18. At all times relevant to this action, Walmart was engaged in the business of selling pre-assembled bicycles to consumers including Plaintiffs.

19. Walmart is one of the largest retail sellers of bicycles, including children's bicycles, in the United States, in terms of unit volume.

20. Before June 17, 2024, L.T. asked his parents if they would buy him a new bicycle, and his parents agreed to buy him one.

21. On June 17, 2024, L.T. and L.T.'s father went to the Walmart store in Williston, Vermont to purchase a bicycle for L.T.

22. During that June 17, 2024 trip to Walmart, Plaintiffs purchased for L.T. an assembled bicycle, a Kent Chaos BMX with 20" wheels.

23. L.T. chose a Kent Chaos BMX with 20" wheels because its specifications matched what he and his parents were looking for, and he liked how the bicycle looked aesthetically.

24. The bicycle purchased on June 17, 2024 made a clicking sound when L.T. pedaled, so L.T. and his father brought it back to the same Walmart store on June 18, 2024.

25. During that June 18, 2024 store visit, L.T.'s father explained the problem to a Walmart representative at the customer service desk and asked to speak to someone involved in bicycle

assembly. The Walmart representative said that no one was available. L.T.'s father said Plaintiffs wanted a properly working Kent Chaos BMX with 20" wheels for L.T. L.T.'s father said that they wanted to allow Walmart to fix the bicycle they had already purchased on June 17, or, alternatively, they wanted to exchange it for a properly functioning one. The Walmart representative said that Plaintiffs should return the bicycle purchased on June 17 and buy another one. Accordingly, during that June 18, 2024 store visit, Plaintiffs processed a return of the bicycle purchased June 17, and Plaintiffs bought a second assembled bicycle for L.T.—the same make and model (a Kent Chaos BMX with 20" wheels).

26.     Despite being on notice that the first bicycle sold to Plaintiffs (the one purchased on June 17, 2024) was defective and that Plaintiffs wanted a properly assembled bicycle, Walmart promptly sold Plaintiffs a second bicycle that was defective and improperly assembled (the one purchased on June 18, 2024).

27.     That second bicycle, the one purchased on June 18, 2024, is the one L.T. was riding when the accident occurred.

28.     The serial number of the bicycle L.T. was riding when the accident occurred is 240147822.

29.     L.T. was an experienced, skilled, and safe 10-year-old bicycle rider.

30.     The defective condition of the bicycle was not open or obvious to Plaintiffs.

31.     Plaintiffs did not know about the defective condition of the bicycle before the accident.

32.     Before the accident, Plaintiffs reasonably believed the bicycle purchased on June 18, 2024 was properly assembled and not defective.

4

**June 28, 2024 accident**

33.    As a result of the defective assembly of the bicycle at issue, L.T. had a very serious accident and was badly injured.

34.    Before June 28, 2024, the day of the accident, L.T. had ridden the bicycle for, at most, a few seconds—in his driveway on the day the bicycle was brought home from Walmart, on June 18, 2024.

35.    On June 28, 2024, L.T. went with his father and younger brother to a nearby bicycle park in Essex Junction, Vermont, to test out the bicycle, on varied terrain, for the first time.

36.    L.T. was very familiar with this bicycle park and all of the terrain there, because he had ridden there on many other prior occasions, on all terrain, on other bicycles, without incident.

37.    It was clear and dry that day, in the high 60s or low 70s.

38.    The dirt terrain at the bicycle park in Essex Junction was dry and clear of obstructions.

39.    L.T. wore a helmet and was not riding at high speed, and his father was nearby.

40.    Shortly (no more than about a minute) after he got on the bicycle and started riding, on terrain designated and posted as "EASIEST," the loose handlebars turned approximately ninety degrees, the bicycle abruptly stopped, and L.T. was thrown directly onto the end of the left handlebar grip.

**Injuries**

41.    Being thrown onto end of the handlebar grip caused severe internal injuries to L.T., including significant abdominal trauma requiring emergency surgery.

42.    L.T. experienced serious post-surgical complications.

43.    After being discharged from the hospital, L.T. was hospitalized again due to complications.

44.    In total he has spent 20 days in the hospital.

45.    L.T. has experienced substantial trauma, pain, suffering, anguish, and loss of enjoyment of life, from the time of the accident, and including during his hospitalizations and post-hospitalizations.

46.    L.T. has endured extensive, invasive medical treatment.

47.    L.T. faces permanent medical conditions and ongoing physical and other health issues that substantially affect his daily life, activities, and overall well-being.

48.    The injury and ongoing conditions have drastically, negatively affected L.T.'s life.

49.    L.T. faces the prospect of future physical complications as well.

50.    Plaintiffs have incurred and will incur medical expenses for the care and treatment of L.T. and have otherwise suffered harm and damages as a result of Walmart's wrongful conduct.

51.    With this lawsuit, Plaintiffs seek damages and other relief in an amount in excess of $75,000.00.

**Defective assembly as confirmed by expert's report**

52.    No one has adjusted the bicycle since the time it was purchased at Walmart on June 18, 2024.

53.    In August 2024, the bicycle was taken to a local bicycle store for a brief, initial inspection, the store confirmed that the bicycle was improperly assembled, and the store did not adjust anything or perform any work on the bicycle.

54.    In December 2024, Alan Coté inspected the bicycle.

55.    Mr. Coté is a highly qualified, nationally recognized, and widely respected bicycle-accident expert.

56.    Mr. Coté confirmed, in a written expert report, that the bicycle was improperly assembled and that the defective assembly caused the injury.

57.    Mr. Coté did not adjust anything or perform any work on the bicycle.

**Plaintiffs give notice of claim**

58.    On February 3, 2025, Plaintiffs served on Walmart a letter, with enclosures, giving notice of and providing a detailed account of the accident and injuries, and asserting a claim against Walmart.

59.    The February 3, 2025 letter's enclosures included Walmart receipts for the bicycles purchased on June 17, 2024 and June 18, 2024, Mr. Coté's expert report, and (included in Mr. Coté's report) photographs of the bicycle at issue (the one purchased on June 18).

**Walmart Claims Services, Inc. responds on behalf of Walmart**

60.    Walmart Claims Services, Inc. is an affiliate of Walmart.

61.    Following service of Plaintiffs' February 3, 2025 letter, Walmart has acted by and through its agent and affiliate, Walmart Claims Services, Inc., in connection with the present matter.

62.    Walmart did not respond to Plaintiffs' February 3, 2025 letter except to the extent it did so through Walmart Claims Services, Inc.

63.    On February 13, 2025, in response to Plaintiffs' February 3, 2025 notice, Walmart Claims Services, Inc. sent a letter to Plaintiffs stating in part: "Walmart Claims Services (WCS) has administered retail customer injury and property damage claims for Walmart and its related companies and their insurance companies since 1993. Our company believes in treating customers fairly and in providing excellent customer service."

64.    Walmart in fact did not treat Plaintiffs fairly and did not provide excellent customer service.

65.    The February 13, 2025 Walmart Claims Services, Inc. letter further stated in part that "[o]ur investigation of this claim is currently ongoing" and asked for certain information about the bicycle and Plaintiffs by February 24, 2025.

66.    With their February 3, 2025 notice, Plaintiffs had already provided some of the information Walmart Claims Services, Inc. requested in its February 13, 2025 letter.

67.    Nevertheless, on February 20, 2025, Plaintiffs provided all of the information Walmart Claims Services, Inc. had requested in its February 13, 2025 letter.

**Walmart tries to disclaim responsibility, tries to blame another company, and ignores Plaintiffs' questions**

68.    Walmart tried to deny any responsibility for the defectively assembled bicycle, the accident, and L.T. injuries, by pointing the finger at another company, and then Walmart refused to explain why it was blaming the other company.

69.    Walmart, through Walmart Claims Services, Inc., claimed that another company, National Assemblers, Inc., had assembled the bicycle, stated that Walmart had "tender[ed]" Plaintiffs' claim to National Assemblers, and claimed that Walmart was not responsible for the defectively assembled bicycle it sold to Plaintiffs on June 18, 2024 or for L.T.'s injuries.

70.    In March 2025, National Assemblers indicated to Plaintiffs and Walmart that National Assemblers did not believe it had assembled the bicycle because, National Assemblers stated, "NAI is not an exclusive third-party assembler to Walmart," National Assemblers "track[s] [its] builds" by putting distinctive stickers on bicycles it assembles, and, from the photographs of the bicycle that Plaintiffs had provided, it appeared to National Assemblers that there was no such sticker on the bicycle at issue.

71.    On March 13, 2025, Plaintiffs asked Walmart through its agent Walmart Claims Services, Inc., "Why do you believe National Assemblers assembled the bike?"

72.    On March 20, 2025, Plaintiffs again asked Walmart through its agent Walmart Claims Services, Inc., "[W]hy do you believe National Assemblers assembled the bike?"

73.    To date, Walmart and Walmart Claims Services, Inc. have not responded to Plaintiffs' questions asking why Walmart believes National Assemblers assembled the bicycle.

74.    In their February 3, 2025 notice, again on March 11, 2025, and again on March 13, 2025, Plaintiffs offered to allow Walmart to inspect the bicycle in-person.

75.    To date, Walmart and Walmart Claims Services, Inc. have not responded to Plaintiffs' offers to allow in-person inspection of the bicycle.

76.    Even if National Assemblers (or some other entity) had assembled the bicycle, Walmart is still liable for selling the defectively assembled bicycle and for the resulting injuries and damages.

77.    Plaintiffs reserve the right to add National Assemblers (or some other entity) as an additional defendant if is established that it assembled the bicycle or is otherwise responsible, in which case it would be jointly and severally liable along with Walmart.

### Defendants' conduct is dangerous and egregious

78.    Plaintiffs are reasonably concerned Walmart's defective bicycle assembly problems are widespread and that other people could get seriously hurt too, given that, for example: Walmart is one of the biggest bicycle retailers in the United States; both bicycles Plaintiffs purchased from Walmart in June 2024 were defective; Walmart sold the second defective bicycle to Plaintiffs even though it was on notice of the first; the second defective bicycle caused serious injuries to L.T; Walmart has taken no responsibility; Walmart responded inadequately to Plaintiffs' February 3, 2025 notice; Walmart did not respond at all to Plaintiffs' questions about why it claimed another company assembled the bicycle; and Walmart did not respond at all to Plaintiffs' offers to allow Walmart to inspect the bicycle.

79.    These and other circumstances are also further evidence of Walmart's reckless, malicious, willful, wanton, and callous disregard for L.T.'s safety and well-being and for Plaintiffs' rights.

### COUNT I: NEGLIGENCE

80.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

81.    Walmart owed Plaintiffs a duty to exercise reasonable care in assembling, directing the assembly of, tracking the assembly of, inspecting, and selling bicycles, and to ensure that the bicycles it sold were safe for their intended and foreseeable use.

82.    Walmart also owed Plaintiffs a duty to exercise reasonable care in responding to customer complaints, particularly when placed on notice that a product it sold may have been defectively assembled and where defective assembly of such a product can cause serious injury.

83.    Walmart breached its duty of reasonable care in one or more of the following ways, including but not limited to:

    a.    Selling a bicycle that was defectively and dangerously assembled;

    b.    Failing to properly inspect or verify the safety of the bicycle sold to Plaintiffs on June 18, 2024;

    c.    Failing to properly inspect or verify the safety of the bicycle sold to Plaintiffs on June 18, 2024, despite being on notice that the bicycle it previously sold to Plaintiffs was defective;

    d.    Failing to have reasonable procedures in place to ensure that bicycles sold to consumers were properly assembled and safe for use;

    e.    Failing to exercise reasonable care in responding to Plaintiffs' return of the first defective bicycle;

    f.    Selling a replacement bicycle without properly inspecting it or verifying its safety, despite having reason to suspect assembly errors;

    g.    Failing to properly supervise or oversee whoever assembled the bicycles sold to Plaintiffs;

    h.      Failing to track the assembly of the bicycle sold to Plaintiffs on June 18, 2024; and

    i.      Otherwise acting unreasonably, carelessly, or recklessly in the sale and handling of the bicycles at issue.

84.     As a direct and proximate result of Walmart's negligence, the bicycle it sold to Plaintiffs on June 18, 2024 failed while being used in a foreseeable manner, causing L.T. to suffer severe injuries.

85.     Plaintiffs are entitled to recover damages from Walmart for all injuries and losses caused by its negligence, including but not limited to medical expenses, pain and suffering, anguish, loss of enjoyment of life, incidental and consequential damages, and any other damages permitted by law.

## COUNT II: STRICT PRODUCT LIABILITY

86.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

87.     Sellers of defective products that are unreasonably dangerous to the consumer or user when the product is sold in a defective condition are strictly liable.

88.     The bicycle sold by Walmart to Plaintiffs on June 18, 2024 was defectively assembled at the time it left Walmart's control, rendering it unreasonably dangerous for its intended and foreseeable use.

89.     The defect in the bicycle was related to its assembly, including a loose stem bolt that permitted the handlebars to rotate independently of the front wheel, causing an abrupt and dangerous failure during ordinary use.

90.     The defective condition of the bicycle was not open or obvious to Plaintiffs, and L.T. used the bicycle in a reasonably foreseeable and intended manner.

91.     As a direct and proximate result of the defective and unreasonably dangerous condition of the bicycle, L.T. suffered severe injuries.

92.    Walmart is strictly liable to Plaintiffs for all damages resulting from the sale of the defective and unreasonably dangerous bicycle, regardless of Walmart's knowledge or intent.

93.    Plaintiffs are entitled to recover damages from Walmart for all injuries and losses caused by the defective bicycle, including but not limited to medical expenses, pain and suffering, anguish, loss of enjoyment of life, incidental and consequential damages, and any other damages permitted by law.

### COUNT III: BREACH OF WARRANTY

94.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

95.    On June 18, 2024, Walmart sold the bicycle to Plaintiffs in the ordinary course of its business as a seller of consumer products, including bicycles.

96.    At the time of sale, Walmart expressly and/or impliedly warranted that the bicycle was properly assembled, fit for its ordinary and intended use, and free from defects in material or workmanship.

97.    The warranties at issue include but are not limited to:

a.    The implied warranty of merchantability, pursuant to 9A V.S.A. § 2-314;

b.    The implied warranty of fitness for a particular purpose, pursuant to 9A V.S.A. § 2-315; and

c.    Express warranties made by Walmart, either in writing, orally, or by implication in connection with the sale of the bicycle for its ordinary purpose of safe transportation and recreational use.

98.    The bicycle Walmart sold to Plaintiffs on June 18, 2024 was not fit for its ordinary or intended use because it was defectively assembled, including a dangerously loose stem bolt that caused the handlebars to rotate independently of the front wheel during ordinary use.

99.     The defective condition of the bicycle existed at the time it left Walmart's control and at the time it was sold to Plaintiffs.

100.    As a direct and proximate result of Walmart's breach of its express and/or implied warranties, the bicycle failed while being used in a foreseeable and intended manner, and L.T. suffered severe injuries.

101.    Plaintiffs have satisfied all conditions precedent to recovery under the applicable warranties, including providing reasonable notice of the defect and resulting injuries.

102.    Walmart's breach of warranty directly and proximately caused Plaintiffs' injuries and damages, for which Walmart is liable.

103.    Plaintiffs are entitled to recover damages from Walmart for breach of warranty, including but not limited to medical expenses, pain and suffering, anguish, loss of enjoyment of life, incidental and consequential damages, and any other damages permitted by law.

## COUNT IV: VIOLATION OF VERMONT CONSUMER PROTECTION ACT

104.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

105.    The Vermont Consumer Protection Act, including 9 V.S.A. §§ 2451 - 2461, prohibits unfair or deceptive acts or practices in commerce.

106.    Walmart was, at all times relevant to this action, engaged in commerce within the meaning of the Vermont Consumer Protection Act.

107.    Walmart engaged in unfair or deceptive acts or practices by selling Plaintiffs a defectively assembled bicycle on June 18, 2024 while representing—expressly or by implication—that the bicycle was properly assembled, safe, and suitable for its ordinary and intended use and by omitting to tell Plaintiffs that the bicycle was not properly assembled, safe, and suitable for its ordinary and intended use.

108.    Walmart's conduct was deceptive because it had the capacity or tendency to mislead reasonable consumers, including Plaintiffs, into believing that the bicycle was safe and free of defects when it was not.

109.    Walmart's conduct was also unfair because it violated established public policies, offended public expectations of fair dealing, and caused substantial injury to consumers, including Plaintiffs, that was not reasonably avoidable and not outweighed by countervailing benefits.

110.    Plaintiffs are consumers within the meaning of 9 V.S.A. § 2451a(a), as they purchased the bicycle for use by L.T., a member of their household.

111.    As a direct and proximate result of Walmart's unfair and deceptive practices, Plaintiffs suffered damages.

112.    Plaintiffs are entitled to recover damages and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

a.    Compensatory damages for all injuries and losses suffered by Plaintiffs, including but not limited to past and future:

  i.    Medical expenses;

  ii.    Pain and suffering;

  iii.    Anguish;

  iv.    Loss of enjoyment of life;

  v.    Emotional distress;

  vi.    Out-of-pocket expenses;

  vii.    Loss of the benefit of Plaintiffs' bargain;

14

        viii.   Incidental and consequential damages reasonably resulting from Defendants' conduct; and

        ix.   Any other actual damages permitted by law;

b.    Treble damages pursuant to 9 V.S.A. § 2461(b) for Defendants' willful or knowing violations of the Vermont Consumer Protection Act;

c.    Punitive damages for Defendants' reckless, malicious, willful, wanton, or callous disregard of Plaintiffs' rights and L.T.'s safety and well-being;

d.    Reasonable attorneys' fees and costs;

e.    Pre-judgment and post-judgment interest;

f.    Costs of suit incurred herein; and

g.    Any such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated at Plainfield, Vermont, this 29th day of April, 2025

Respectfully submitted,

**HOCHSCHILD LAW FIRM, LLC**

By: /s/ Adam S. Hochschild
Adam S. Hochschild
PO Box 401
Plainfield, VT 05667
Phone: 314.503.0326
adam@hochschildlaw.com

*Counsel for Plaintiffs*

16